Spencer, J.
Before I enter on the merits of this cause, I shall briefly examine some preliminary objections. It appears from the chancellor’s opinion, that a decree was read at the hearing, which had been given in the court of chancery in June, 1815, in a cause pending in that court, between Tallmadge and others against Lyon, setting aside a sale of the property ot Lyon and Dewey, under a judgment in favour of Richmond, and assigned to Tallmadge and others, on the ground that it was a fraudulent sale. That decree was taken by default, and the complainants in that suit were ailowed to resell the property, thus fraudulently sold, on that judgment. His honour, the Chancellor, considered this as a decisive objection to any relief to Lyon in this cause, on the ground that that decree having never been questioned, remained good, and could not be impeached in a collateral way.
I cannot assent to this conclusion. The subject matter of the appellant’s bill could never have been set up as a defence in that suit, for it was wholly a disconnected subject. If the sheriif’s sale was fraudulently procured by Lyon, he could not defend himself from that fraud, by insisting on the matters forming the grounds of the present bill. This consideration would be sufficient to show, that the decree in the former cause cannot operate as a bar to this suit. But there is another answer: the decree in the dormer cause, to be available, should have been pleaded, or relied on in the answer, as a bar. ■ It was not enough to read it at the hearing; -and I must doubt the propriety of its being read at all at the hearing.
It is a well-established rule in equity, that a plea in bar of a former decree must state so much of the former bill and answer, as to show that the same point was then in issue. (Hind. 176. 2. Atk. 603. 2. Ves. 577.) And, beyond all controversy, the case stated in the appellant’s bill was not, and could not have been, in issue in the former cause. It was then a mistake to-suppose that the appellants sought to attack or impeach the former decree, in a collateral way, or in any shape; and that de-, cree does not stand in the way.
It has been urged, and, I think, ungraciously, that the *516 answer of all the defendants, composing the firm of Tallmadge, Smith & Co., except one of them, adopts the answer of Richmond, and that no replication having been filed to their answer, it is admitted to be true ; and, then, it is insisted, all fraud, coilusión, or oppression is disproved. '
There can exist no doubt, that all the proof in the power of any of the respondents is before the court. The firm of Tallmadge, Smith & Co. appear to have had no personal concern in any of the transactions, and they admit their ignorance of them; but though their attorney, Mr. Mumford, under these circumstances, having referred to Richmond’s, Dewey’s, and William S. Tallmadge’s answers, and stated their expectation of being able to prove the facts set forth by the other respondents,’ we ought to consider the proof given by them, as the proofs of the respondents ; thus adopting and referring to the answers of the other respondents. Thete is yet a more decisive answer. The fact is not made out that there was no replication to these answers. There appears to be a replication, and the court is bound to intend it was filed in season, unless the contrary be proved. Besides, as this is mere matter of form, and all the evi-. dence has been adduced which the parties, or either of them, can bring forward, the court below would have permitted the replication to have been filed, nunc pro tunc, as both parties have proceeded on the idea that the cause was completely at issue. This appears by the commissions to examine witnesses, and the interrogatories.
This brings me to the merits of the cause ; and after as full a consideration as I have been able to give, I am bound to say, that, in my judgment, the decree in the court below ought" to be reversed, on two grounds :
First. On the ground that Richmond, if he, indeed, ever obtained' Lyon’s assent to the assignment of the judgment he held against Lyon, Dewey, and Brockway, and to the release of errors in the judgment in favour of Tallmadge and others, against him, obtained it under circumstances of such fraud and oppression as to render the assent nugatory and void.
Second. Admitting all the facts set up by Richmond to be true, they form no defence to the appellant’s title to the relief he asks.
The’object of the appellant’s bill is to set aside the assignment of the judgment in favour of Richmond against the appellants and Dewey, and the release of errors executed by Rich *517 ynond on the judgment against him, in favour of Tallmadge, Smith & Co., and to be permitted to make use of Richmond"1 s name in prosecuting a writ of error on the latter judgment. And unless the appellants have forfeited the right to prosecute the writ of error, it appears to me there cannot be a doubt, that, upon principles, as well of equity as of justice, they ought to be allowed to exercise it.
The question whether that judgment was erroneous, is not now to be considered; the object of the bill is to get rid of these acts, which operate as a hindrance to the prosecution of the writ of error ; and the question before us is, whether the appellants are not entitled to the interposition of the court of chancery, to enable them to proceed in the writ of error, by removing the obstacles which have been interposed.
It may be useful to ascertain under what circumstances of fraud and imposition a court of equity will give relief; that, having the principle, we may apply to it the facts of the case. Lord Hardwicke, (2 Ves. Rep. 155, 156.) specifies the kinds of fraud which a court of equity will relieve against; and under his third head, he speaks of fraud which may be presumed from the circumstances and conditions of the parties contracting ; and this, he says, goes further than the rule of law, which is, that it must be proved, not presumed ; but he adds, ie it is wisely established in equity to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do, is equally against conscience as to take advantage of his ignorance ; a person is equally unable to judge for himself in one as the other.’’ The same principles are maintained by Lord Erskine. (13 Ves. jun, 51.) He says, a court of equity will prohibit a party from taking advantage of an instrument obtained by an advantage taken of men unguarded in particular situations, and under circumstances, where courts of law cannot give adequate remedy ; though, he says, fraud, according to the ordinary understanding of the term, is equally the subject of their jurisdiction.
These are valuable and salutary principles, “ coming home to the bosoms and affairs of menand it is for us now to consider, whether the facts proved warrant the application of them.
I consider it to be immaterial whether Richmond did, or-'did not, agree, that Dyon and Dewey should have the right to *518 use hi's name in the prosecution of the writ of error; for he had no right to withhold it, and if he had done so, a court of equity would have compelled him to permit the use of his name, and would have restrained him from doing any act impairing the rights of Lyon and Dewey. Can this be doubted, when we consider, that the bond given by Lyon and Dewey to Richmond, was in the nature of a bond of indemnity ; that a final recovery by Tallmadge, Smith Co, against (.Richmond,for the escape of Brockway, was, in effect, a recovery against Lyon and Dewey, though nominally against Richmond; that it fixed them, beyond controversy, for the amount recovered against Richmond; and provided they were able to respond, it was perfectly immaterial to Richmond, whether there was a .judgment against him or not ? Lyon and Dewey were" to bear the burthen, and as sureties to the sheriff", they had a perfect right to contest, in the last resort, the right of Tallmadge, Smith & Co. to recover against Richmond; for that was to be the basis of their liability.
I shall not, therefore, stop to inquire, how the proof stands in regard to Richmond’s assent to their using his name, to prosecute the writ of error, though I think the evidence pérfectly clear that he did consent. My doctrine is, that he could not refuse.
Again ; although I hold it to be unimportant, whether Lyon actually consented that Richmond should assign his judgment against the appellants, let us examine under what peculiar and extraordinary circumstances this consent was forced from him. When Richmond required further security", under the threat of assigning the judgment, unless it was given, he had a judgment which operated as a lien on the real property of Lyon and Dewey, which is proved, without contradiction, to have been unquestionable security to a larger amount than the judgment of Tallmadge, Smith & Co. Under the apprehension, however, that Richmond had it in his power, by assigning the judgment, to strip them of their right to proceed on the writ of error, Lyon offered the security of a Mr. Fish, for 1800 dollars, who is stated, by all the witnesses, to be worth 10 or 15,000 dollars ; and, in truth, it seems to me impossible to read the proofs, without being convinced, that Lyon did every thing in his power, and more than, in honesty, ought to have been required of him, to satisfy the demands of Richmond for security ; and, at length, believing himself at the mercy of Richmond, and without redress, yielded *519 a reluctant assent. To show this to be a case of complete oppression, let us examine the shallow pretences set up by Richmond, for further security. He alleges that he was alarm ed at the information he had received that Lyon had conveyed, or was conveying his real estate to Nathan Fish, with a view to place the same out of the reach of the judgment he had, or was likely soon to obtain, by confession. I see no proof, that he ever received such information, or that the fact itself was true. Richmond does not specify the name of any person who gave such information, and there is not a particle of legal proof, (hearsay there is,) that such information was communicated to Richmond, or that the fact was so. I put out of the question Dewey’s testimony, if he stood ever so indifferent; he knows nothing himself; he speaks of deeds he never saw, and relates conversations with persons now alive, and who might have been examined. I reject the whole of this illegal and inconclusive evidence ; and I then perceive nothing to warrant the assignment, on the ground of apprehension; and must conclude, that the pretences set up to justify the demand for further security, evince a settled determination on the part of Richmond to oppress the appellant Lyon, by taking an unconscientious advantage of his situation, of his fears, and his ignorance; and, consequently, I hold the assignment and the release of errors to have been given in bad faith, and, so far as they affect the appellants, null and void.
The second proposition, admitting that all the facts set up. by Richmond to be true, they form no defence to the appel-. ant’s title to relief, there will be no difficulty in maintaining.
I have already noticed the relative situation of the parties. That Lyon and Dewey were sureties to the sheriff; that their bond was a bond of indemnity, and that they were liable to the sheriff only in case there was an eventual and final recovery against him; and that they being fixed by such recovery, had a natural and equitable right to contest, in the last resort, his liability for the escape. I now hold, that the assignment did not prejudice the appellants’ right to prosecute the writ of error, had their consent been fairly and fully obtained; and that there is no legal proof before the court, or which we can notice, that the release of errors was given with Lyon’s assent. What rights did Tallmadge, Smith & Co. acquire in virtue of the assignment made by Richmond ? Certainly no other *520 or greater right than Richmond could confer. Richmond’s r*§kt to enforce the collection of the judgment against Lyon and Dewey depended entirely on this, whether Tallmadge, Smith & Co. had a legal right to recover againt him for Brockway’s escape. And, although the supreme court had pronounced a judgment against Richmond, a right had been reserved in the case before that court, to test, in this court, the correctness of that judgment,, by turning the case made into a special verdict. The consent to the assignment of the judgment was no waiver of the right to prosecute the writ of error; and Tallmadge, ‘Smith & Co. acquired, by the assignment, the right to enforce the collection of the judgment, if it should eventually appear, on the decision of the writ of error, that they had just grounds of recovering against the sheriff for the escape. It is, therefore,unnecessary to disturb that assignment; it operates no prejudice to the appellants.
It has been insisted, that Richmond, having released the errors in the judgment against him, with the consent of Lyon, the very object of the bill is defeated, and that it would be nugatory to require Richmond’s assent to using his name in prosecuting the writ of error, when his release would cure all errors. I have said, that there is no legal proof that Lyon did assent to the release of errors by Richmond.
It is an incontrovertible rule in the court of chancery, that no ■ interrogatories can be put to witnesses that do not arise from some fact charged and put in issue. This was the rule unanimously adoped by this court, in the case of James v. M'Kennon; (6 Johns. Rep. 565.;) and it is a rule so necessary and just, to prevent surprise upon either party, as not to stand in need of any argument to enforce. or elucidate it. In the case referred to, the respondent had examined his witnesses to establish a fraud not alleged in the bill: but this court considered the proof inadmissible, irrelevant, and immaterial, and wholly rejected it. The same principle applies to a fact, not set up in an answer, and which is a material and independent, fact, not arising from the bill : to such fact, which might have been set up in the. answer, but -is not, the defendant can adduce no proof; because it forms no part of the issue between the parties, and it would operate as a complete surprise on the complainant, who could not foresee that proof of a fact not insisted on in the answer, would be given*
*521 The only answer which states the release of errors, is that of Richmond, and he does not allege, or pretend, that Lyon ever assented to the giving the release; all he says on that subject is, that he released ail errors in the judgment recovered against him, and that it was known to Lyon. Now, admitting that he did know it, his knowledge that Richmond was about to release the errors is a very distinct thing from his actually agreeing to it. All the proof in the case, that goes to show Lyon's assent and agreement to the release of errors, is irrelevant, impertinent, and inadmissible, inasmuch as Lyon's consent to the release was not in issue, and he could not be expected to disprove a fact which none of the answers had alleged or set up. The court therefore, bound, on the authority of the case of James v. ISj M‘Kennon, to reject this proof, and then the case stands on Lyon’s consent to the assignment of the judgment only. It is true that the appellants’ counsel did not take this point; but it is the duty of a court of justice, in giving judgment upon any case submitted to them, to give that judgment according to the justice and law of the case; and when any point not urged by counsel, presents an important bearing on the cause, I hold it to be my duty to notice it, and be influenced by it. The object in employing counsel, and permitting them to argue before a court, is to aid the court in its investigations; and it would be strange if the court were bound to shut their eyes upon every point not suggested by them.
In whatever light this cause presents itself to my view, I can perceive no solid ground for doubt, but that the appellants are entitled to relief. If Lyon consented to the release of errors, I am of opinion that his consent was obtained by imposition and fraudulent practices ; that an unjust and unconscientious advantage was taken of him, under circumstances which entitled him to be relieved. I hold that the assignment of the judgment took away no right which the appellants had, and that it conferred none but such as Richmond could give ; that his judgment againstLym and his co-obligors, was merely in the nature of an indemnity against the eventual recovery in this court, by Tallmadge, Smith. Co. against him ; but that it did not operate to deprive • the appellants of their just, equitable, and inherent right to contest, in Richmond’s name, the validity df the recovery against him, and that there is no proof before the court, that Lyon ever *522 agreed, or consented, that Richmond should execute the release of errors. I am, therefore, for reversing the decree.
Thompson, Ch. J.
It will be necessary, to a right understanding and correct application of the testimony in this case, to ascertain, from the pleadings, the grounds upon which the appellants placed their claim to relief in the court of chancery.
The bill charges, that the appellants, after receiving notice that the cause of Tallmadge, Smith fy Co. against Richmond, for the escape of Brockway, was to be brought to trial, in order to induce Richmond to place the further defence of that suit in their hands, proposed to confess a judgment on the bond given by them, as the sureties of Brockway, to Richmond, the sheriff, and that it was thereupon agreed, that they should confess a judgment on the bond, and that Richmond, in consideration thereof, should give up and relinquish to the appellants the further conduct and defence of the suit against Richmond, for the escape; but that Richmond, and the plaintiffs in the escape suit, in violation of that contract, fraudulently combined to supersede any further proceedings, on the writ df error, by Richmond's assigning to them the judgment, so confessed, upon the surety bond, and releasing all errors upon the judgr ment for the escape of Brockway. The substance of the allegations in the bill, therefore, is a fraudulent violation of a contract, in relation to the prosecution of a writ of error upon the escape suit of Tallmadge, Smith & Co. against Richmond. Without particularly referring to the several answers of the defendants in the court of chancery, I am warranted in saying, that they contain a most direct and unequivocal denial of any such agreement or contract as is stated in the bill, and of the .fraud and collusion charged against them.
.Upon such a state of the pleadings, it is not disputed, that the settled rule of the court of chancery requires moró evidence than the testimony of one witness, to support the allegations in the bill. A recurrence to the testimony will, I think, warrant the conclusion that, so far as relates to the agreement set forth in the bill, it is unsupported, except by the naked and uncorroborated testimony of a single witness. Richardson does state, that the confession of judgment by the sureties .of Brockway was given on an express stipulation by Rich *523 mondas attorney, that Lyon and Dewey should have leave, at their expense, to turn the case made in the cause against Richmond, for the escape, into a special verdict, and bring a writ of error thereon. But it is worthy of particular notice, that this witness says, that such confession was given on the plaintiffs’ entering into a stipulation in writing, which is referred to, and which contains no provision whatever in relation to the prosecution of the writ of error. It only relates to the amount for which an execution should issue, upon such judgment. Is it not reasonable to conclude, that when the parties undertook to reduce to writing the stipulation in relation to the confession of that judgment, the whole agreement would have been incorporated ? Instead of this, according to this testimony, the most essential and necessary part is omitted. I would not be understood as intimating that this witness has intentionally misstated any facts. There is no doubt, from the testimony of many of the witnesses, that there were various conversations between the parties in relation to the prosecution of the w'rit of error, and which may have occasioned some mistake or misapprehension, as to what did take place at the time the confession was given. But admitting the agreement to have been precisely as stated by this witness, it is only one witness against the denial by the answer, and the allegation in the bill, of course, is not supported. The testimony of Lombard does not at all disprove the answer; he says Richmond admitted that Lyon always opposed his making the assignment of the judgment, but, in the conversation alluded to by him, Lyon did not pretend, or even intimate, that such assignment was in violation of any agreement between them. Nor in all the various interviews and conversations between Lyon and Richmond, relative to the additional security required by Richmond, do we hear any intimation of a violation of an agreement in relation to the prosecution of the writ of error. If any such agreement had existed, we should most likely have heard of Lyon charging him with a breach of his engagement, and not of his endeavouring to procure additional security, so as to prevent the assignment. We must, therefore, I think, without doubt, assume, that there is no competent proof of any agreement between Richmond and the sureties of Brockway, to give them the control of the judgment against Richmond for the escape.
*524 It was, however, urged on the argument, that the sureties*, independent of any special agreement for that purpose, had a right to lake the conduct and management of the suit against the* plaintiff for the escape, and to prosecute a writ of error upon that judgment. Admitting this right, it must necessarily follow, that if the sureties were so far parties in interest, as to be entitled to bring a writ of error, they are competent to assent to a release of errors, and must be bound by such assent, if given.
The next inquiry, therefore, is, whether the proof in the cause, supports the allegation in the bill, that the assignment by Richmond of his judgment against Lyon and others, and the release of errors in the escape-cause, were procured by a fraudulent agreement, between Richmond and the house of Tallmadge, Smith Sc Co., to the oppression and injury of the sureties of Brockway, in depriving them of the benefit of a writ of error. The answer is equally explicit in the denial of the fraud, as it is of the agreement set up in the bill, and we must look to the proofs, to ascertain the truth with respect to this allegation.-
It was admitted on the argument, and indeed could not be questioned, that if Lyon voluntarily assented to the assignment and release of errors, he has no cause of complaint, and is not entitled to any relief.
The only ground of oppression or unfair conduct, on the part of Richmond, that has been urged with any appearance of plausibility, is requiring of the sureties of Brockway additional secu~ rity, as the only terms upon which he would refrain from assigning the judgment and releasing the errors. It cannot be pretended that Richmond was bound to prosecute a writ of error. He had, in good faith, and with the aid and assistance of counsel employed by the sureties of Brockway, defended the suit for-the escape ; and the judgment obtained against him, thus defended, was all that was necessary to entitle him to a remedy over against the sureties. He could not be bound to incur the trouble and expense of prosecuting a writ of error; and it was very reasonable for him to wish to exonerate himself from all: responsibility, which he could do, by closing with the proposition made by Tallmadge, Smith <§■ Co., to assign the judgment he had against the sureties, and release the errors in their judgment against him. This proposition was not accepted hastily, and without notice to Lyon. Richmond repeatedly offered to permit the sureties to take the control and management of the suit, and *525 prosecute the writ of error, provided they would deposit the amount of his judgment against them, or give him additional security, to indemnify him in that behalf. Was there any thing unreasonable, or unjust and oppressive in this ? In our inquiries, whether Richmond had any cause for alarm, we must look at the then state of things, and the information he then had; and not suffer our judgment to be influenced by any subsequent information he might have acquired, which ought to have removed his alarms. From the testimony, as it now appears before us, it is most likely that Richmond was amply secured by his judgment. The conveyance given by Lyon to Fish of his farm, according to the present proofs, would be deemed fraudulent, and, of course, couldnot prejudice Richmond, or defeat his judgment. But Richmond's conduct is not to be tested by this rule. If he had then reasonable grounds for believing himself insecure, he was justifiable in requiring better security, or in relieving himself from all further risk and responsibility. Richmond, in his answer, says, he was alarmed as to his situation, in relation to his security, in consequence of information he had received, that Lyon had conveyed, or was about conveying away, his real estate to Fish, with a view of placing the same out of the reach of the judgment, which he had, or was likely soon to obtain, against him. The answer in this respect, it is true, is not evidence, but it is supported by the proofs in the case. Dewey, in his examination as a witness, says, he knew that Lyon conveyed away his farm to Fish, about' the time the suit was commenced by Tallmadge, Smith <£/• Co. against Richmond, for the escape of Brockway. Although such evidence would not be competent proof of the transfer of the title, yet it afforded reasonable ground of suspicion, that Lyon was attempting to place his property beyond the reach of Richmond's judgment. Whitney, another witness examined in the cause, says, that in a conversation with Lyon, respecting Richmond's intention to assign the judgment against him, to Tallmadge, Smith &/■ Co., Lyon said, Richmond might take out an execution as soon as he pleased, as his, Lyon's, property was secure, he did not care any thing about the execution, nor how quick it came. Richmond, in his answer, does not say that these were the sources of the information which occasioned his alarm. Yet it is reasonable to conclude, that they rvere. But if they were not, the case is still stronger in making out *526 cause of suspicion. These were facts then existing; and if Richmond's alarm arose from other information, his real cause t , n • for suspicion was much strengthened. This proof is, at all events, amply sufficient to show that Richmond's alarm was not a mere pretence, for the purpose of justifying his demand of further security, and serving as a cloak for any collusion between him and Tallmadge, Smith Co. to evade the writ of error. The proof in the case does not warrant the conclusion that Richmond was unfriendly to Lyon; but that his conduct proceeded from an honest desire to extricate himself from all further risk and hazard, on account of the escape of Brockway ; ánd the very circumstance of Lyon's being unable or unwilling to give more satisfactory security, was calculated to increase the suspicions of Richmond, as to his responsibility. That Lyon had full and fair notice of Richmond's intention to.assign the judgment and release the errors, unless further security was given, appears from the witnesses on both sides ; and that this was done with the knowledge and approbation of Lyon and Dewey, is very fully proved, by the testimony of Dewey and Mumford, and their evidence is strongly coroborated by other proofs in the cause. If this be so, whatever might have been the previous right of Lyon, touching the prosecution of a writ of error, he waived and abandoned that right, by his consent to the assignment of the judgment, and the release of errors,
Mumford, in his testimony, after stating the various propositions and conversations between himself and Lyon and Dewey, relative to. further security, and the proportion of the debt which each should pay or secure, all which failed of being effected, in consequence of a disagreement between Lyon and Dewey, as to the proportion which each one should assume, Says, that, in the presence, and with the knowledge and approbation of Lyon, it was finally agreed between the witness and Richmond, that he, Richmond, should assign his judgment against Lyon and others, to Tallmadge, Smith cy Co., and release all errors in the judgment for the escape, on Tallmadge, Smith dy Co. discharging him, Richmond, from all responsibility on that judgment ; and that the necessary writings to carry such agreement into effect were, then,, drawn and executed, and the negotiation-completed, and that Lyon was present, and consented and agreed to the same. That he, the witness, drew a written consent to-that effect, and read the same to Lyon, who declared that he. *527 fully agreed to the same, but that he never meant to put his name to any paper again. As to this fact, Mumford is supported hy the testimony of Dewey, who swears that he saw Mumford hand a paper to Lyon to sign, that he read it, and said he agreed to it, hut could not sign it, because he had promised his wife that he never would put his name to paper again. Dewey also states, that, in a subsequent conversation with Lyon, in which he, the witness, found fault with Lyon for-having consented to the assignment and release of errors, Lyon did not pretend to deny that it was done with his knowledge and approbation. This testimony is strengthened hy that of Lombard, a witness on the part of the appellants, who says, that, in a conversation between Richmond and Lyon, relative to this assignment and release of errors, Lyon acknowledged he did not blame Richmond for wishing to get out of trouble ; and a like declaration of Lyon appears from the testimony of Richardson. Had Lyon considered Richmond as having violated any agreement, or practised any fraud or unfair conduct towards him, he would not have held such language concerning him ; it amounted, substantially, to an unwilling approbation of Richmond's conduct, and is altogether inconsistent with the pretence now set up. Nor is there any thing in the testimony of Richardson, which goes to disprove, or render doubtful Lyon's assent to this assignment and release of errors. His testimony relates, principally, to transactions between the parties prior to the assignment, and whilst the attempt was making between Lyon and Dewey, to procure and arrange the additional security, and which is admitted, by all the witnesses, to have totally failed. Richardson was not present when the business was completed, and all that he afterwards heard from Richmond was, that Lyon had told him that he did not blame him for getting out of trouble; that Lyon consented to, and urged, the issuing of the exécution against himself, Dewey, and Brockway, is a fact established beyond contradiction. It was said on the argument, that this was done for the purpose of getting hold of the property of Brockway, in the hands of Dewey, as was alleged ; but this answer is altogether unsatisfactory. If that had been the sole objection, the proceedings on the execution would have stopped them; instead of which, it was not only levied on all Dewey's own property, but on Lyon's also; and Lyon himself took an active part in aiding and assisting the sheriff; *528 ■all wliich is utterly irreconcilable with the idea, that Lyon still wished, or expected, to pursue the writ of error. This he had abandoned, and his object, then, was to compel Dewey to pay his proportion of the judgment. From all the testimony in the case, it appears, that he had been, for a long time, endeavouring to get Dewey to pay, or secure, a part of the judgment. But having failed in this, he had recourse to the execution, for ■this purpose. If Mumford is to be credited, there cannot remain a doubt but that Lyon assented to, and approbated the assignment and release of errors. His testimony is clear, plain, and unequivocal, as to that fact, and given with such circumstantial detail, that utterly precludes the possibility of mistake. If the fact was not so, he must have sworn false ; and is there any thing in the case to justify such a conclusion ? He is corroborated by Dewey, and by Lombard, and even by Richardson, and by the strong and undisputed fact, that Lyon sanctioned and approved the issuing, and aided and assisted in levying, the .execution. Nor is there any evidence contradicting the testimony of Mumford as to that fact. I cannot, judicially, know Mumford, except as he appears in this case. He was known, by the appellants, to be a witness in the cause, and is not impeached. If his character was assailable, he should have been impeached in the court below; that has not been done, and there are no circumstances appearing, in this case, to discredit him. I am not, therefore, prepared, to pronounce upon him the harsh and severe judgment, that he has sworn false ; and without doing so, it seems impossible to deny the assent of Lyon to the assignment of the judgment and release of errors.
In deciding on the merits of the present case, we must lay out of view, altogether, the question which would have been brought before this court upon the writ of error; for admitting the judgment to have been erroneous, it was competent for the parties to waive the error; and if this has been done with the knowledge and assent of Lyon, he comes too late now to complain. It would* I think, be going a little too far, to say, that it was certain, at the time when this transaction took place, that the judgment would be reversed. The assignment and release of errors were given in the fall of 1812; at which time, according to-what had been considered in the supreme court, for years, the settled, construction of the act relative to the security for gaol *529 liberties, there was no error in that judgment. It was not until after this time, that a different construction was adopted by this court. If this release of errors had been given after the decision of a similar question in this court, it would have afforded a pretty strong argument against the good faith of that transaction ; but, admitting it to have been a doubtful question, at that time, we must, in weighing the testimony, look at the then state of things, and not suffer ourselves to be influenced by any subsequent alteration or construction of the law. Judging, then, from the facts and proofs in the cause, I am not able to discover any well-founded doubt, but that the assignment of the judgment, and the release of errors, was a fair transaction on the part of Richmond, after due notice and warning to the sureties of Brockway, and claiming from them no more than reasonable additional security: and I am satisfied that this was done with the knowledge and voluntary consent and approbation of Lyon ; and, if so, there is certainly no ground upon which he can claim the relief sought for. I am, apcordingly, of opinion, that the decree of the court of chancery ought to be affirmed.
Platt, J. and Yates, J. were of the same opinion.
Van Ness, J. was absent.
Allen, Cantine, Cochran, Hascall, Livingston, Stewart, Tibbitts, Van Burén, and Van Vechten, senators, also concurred in the opinion of the chief justice.
Bates, Bicknell, Bloom, Crosby, Elmendorf, Hart, Knox, Mallory, Noyes, Prendergast, Ross, and Swart, senators, concurred in the opinion of Mr. Justice Spencer, that the decree of the court of chancery ought to be reversed.
This being the opinion of a majority of the court,* the following decree was, thereupon, entered: “ Ordered, and decreed, that the decree of the court of chancery, dismissing the appellants’ bill with costs, be, and the same is, hereby reversed, annulled, and vacated; and it is further ordered, adjudged, and decreed, that the release of errors set forth in the appellants’ bill of complaint, and admitted by the answer of the respondents, to have been given by Jonathan Richmond to *530 Benjamin Tallmadge and others, releasing the errors in the judgment obtained in the supreme court, by the said Benjamin Tallmadge and others, against the said Jonathan Richmond, for the escape of Edward Brockway, be, and the same is, hereby annulled and vacated, and shall, accordingly, be delivered up to be cancelled ; and it is further ordered, adjudged, and decreed,, that the appellants be at full liberty to sue out, maintain, and prosecute a writ of error in this court, in the name, and on the behalf of the said Jonathan Richmond, upon the said judgment rendered in the supreme court, in favour of the said Benjamin Tallmadge and others, against the said Jonathan Richmond, for the escape of the said Edward Brockway ; and that a writ of injunction issue, restraining and prohibiting the said Jonathan Richmond from intermeddling with, releasing, or discontinuing the said writ of error, so to be brought and prosecuted; and restraining and prohibiting the other respondents, or any of them, from pleading the said release of errors, hereby annulled and vacated; and, also, that a writ of injunction issue, restraining, prohibiting, and staying all and every execution issued, or to be issued, on the said judgment in the supreme court, in favour of the said Jonathan Richmond, against the said Moses Lyon, Solomon Dewey and Edward Brockway, or any, or either of them, upon the bond given by them to the said Jonathan Richmond, for the gaol liberties, for the said Edward Brockway ; and that such injunction be continued until the final hearing and determination of the said writ of error herein before mentioned, and allowed to be sued out and prosecuted in the name of the said Jonathan Richmond; and in case the said judgment, whereon the said writ of error is allowed to be prosecuted, should be reversed, then, that a perpetual injunction be awarded, to restrain and prohibit such execution upon the said judgment against the appellants and the said Solomon Dewey; and it is further ordered, adjudged, and decreed, that the record be remitted to the court of chancery, to the end that the order, judgment, and decree of this court may be executed.
Decree of reversal.

= For re ve