RueeiN, Judge
 

 The bill assumes as the construction of the will, that the negroes are bequeathed to the
 
 plaintiff;
 
 at least, that they are bequeathed to
 
 Moses
 
 in trust for him. If that were true, the defendants who purchased from
 
 Moses,
 
 with knowledge that he claimed the slaves under his father’s will, would hold them subject to the trust declared in it. But I think it plain, that the testator meant a sale of those slaves, which should be allotted as the third provided for the plaintiff’s support. He says, that
 
 “
 
 one third of the
 
 valuation
 
 of his slaves shall be placed in the executor’s hands for
 
 Hugh’s
 
 support.” This is inaccurately expressed
 
 ;
 
 but means that the executors should get and keep the value of those slaves in their hands. Then they could not keep the slaves themselves. But this is rendered clear by the further provision,
 
 “
 
 that the executors are to pay
 
 Hugh
 
 annually during his life the
 
 interest of the amount”
 
 —not the hire of the negroes and their increase. And ■then comes a disposition of the fund after
 
 Hugh’s
 
 death, •which is not of the negroes,' and their increase, but of “ the principal,” to be divided among three other children. If the wall had stopped here, there could be no doubt that it would have been the duty of the executor to sell the negroes, and put the money at interest for a life annuity to the plaintiff. Is this altered by the subsequent provision? That provision is expressed by way of request, that the defendant
 
 Moses
 
 should take those
 
 *184
 
 negroes, valued for the support of
 
 Hugh,
 
 and pay the valuation into the hands of the executors : and
 
 Moses
 
 and another are appointed executors, of whom the former a{0ne proved the will. It is argued, that if a sale was intended, a case has happened in which it was not s.o meant, and could not be made ; because there wa,s nobody who could sell to Moses, nor to whom he could pay the price. No act was necessary to complete the sale to
 
 Moses,
 
 but his own assent. The testator had already provided for that and the terms ; namely, that the neg’roes should be valued ; which was only necessary in case
 
 Moses,
 
 being an executor, should take them under the bequest in the will. There is no complaint of an improper division, or unfair valuation. That would be a distinct ground of relief, if it existed. But the bill affirms the division and valuation, and seeks the specific negroes allotted for
 
 Hugh.
 
 The meaning of the request to
 
 Moses
 
 to take those negroes could not be, that h'e should hold them upon terms different, and with a less perfect and disposable interest than another purchaser. If he would not keep them himself, he might and ought to sell them, by the terms of the will; and in that case, the purchaser would take them absolutely, and subject to no trust. If he kept them, why should his interest be less, or his title not as perfect ? It is said, because he was executor. Not so. That might be a reason why they should be valued to him, and not to another
 
 ;
 
 but none at all, why he should not have an indefeasible title, when he took them at valuation. The testator trusted him without security with the price, if sold to another. There seems to be no reason why he should
 
 not equally
 
 do so with the price in his own hands. I speak now of the mean-, ingofthe testator himself. Indeed had the other executor proved the will, the defendant
 
 Moses
 
 would have been as much entitled as he, to keep the price of the negroes» The intention then seems to be, to sell those negroes to provide a certain support for
 
 Hugh
 
 by placing the value at interest. And this is the more reasonable inference, when we find by the proofs, that there were only five altogether, and that four of them were of little service,
 
 *185
 
 The two, tiiat were allotteibfor
 
 Ihcgfi,
 
 were young females, the eldest of which was not five years of age, and would have been expensive for several years, instead of yielding any thing towards the plaintiff’s maintenance, B ut the testator wished the slaves to remain in his family, if his son was willing and able to buy them. This he requested him to do ; hut that request did not constitute a trust of the slaves, if the son took them as his own. The will is to be construed as a mode of proposing a sale, and not as incumbering the property with a trust, or embarrassing the purchaser in the disposition of it. Such a purpose would bo inconsistent with the apparent strong desire that
 
 Moses
 
 should take them. For what more likely to prevent him, than attaching such a trust to two slaves of their age and
 
 sox?
 

 The interest of the defendant
 
 Moses
 
 must bo declared to be an absolute one, if he assented to the purchase at all.
 

 That ho made an election in a reasonable time, and fairly, is placed beyond doubt by the contract and release executed
 
 to him
 
 by the plaintiff. The testator died in September 1820. The negroes were divided ami valued October 25th, 1820. And on the 24th October 1821, the plaintiff by his deed, in consideration of g> 107 50, released to his brother “the annuity” bequeathed by his father, and in his hands as the executor. From this it must be concluded, that at that time it was perfectly understood, that
 
 Moses
 
 had taken the negroes as his own .property, and that all parties understood him to be responsible for the value. Upon the matter of the bill therefore, touching any trust in the slaves, it must be dismissed as against ail the defendants.
 

 The bill however charges the insolvency of the executor, and prays general relief; which may be considered as a prayer to secure the fund and the annuity, if a proper case appeal's,
 

 In the answer, the release of October, 1821, is spe-cailly set up as a bar against this demand. While it remains in force, it is an absolute bar. Nor can it be annulled, but upon a bill expressly impeaching it upon the ground of fraud, unless upon its face or from the rela
 
 *186
 
 tion of the parties, the court can declare it void. The fair execution of this instrument is proved by both of the subscribing witnesses ; one of whom, an attorney, prepared it at the instance of the plaintiff himself. Other evidence has been taken by the defendant, going to show, that the agreement on which it was founded, was
 
 bona Jide
 
 and fair; and the plaintiff has offered no proof to impeach it. If therefore the decision turned on the merits of the release, there seems to be no reason to suspect it upon tlie present state of the proofs. But thb court does not enter into that; because the pleadings do n°t impeach it; and. the only matter in issue upon it is that made by the answer and replication, which is the fact °f execution. The plaintiff cannot therefore offer proofs in this case impeaching the release; nor can the *
 
 L
 
 depositions of the defendant tending to sustain it be cons jeered
 
 ;
 
 because the whole is out of the pleadings. If tlie witnesses have sworn falsely, they have not beeri guilty of legal perjury, since they have been interrogated to facts not stated in the bill or answer, nor in any manner put in issue. The court cannot hear the proof; it would be error if we did.
 
 (James
 
 v.
 
 McKernon,
 
 6
 
 Johns.
 
 543.
 
 Lyon
 
 v.
 
 Tallmadge,
 
 14
 
 Johns.
 
 501.)
 

 Where the answer sets up release as a^de-fence to the the^Mi^and^the plaintiff replies ffenerallv li© cannot at the heanng; read tes-ing the release as fraudulent.
 

 iíSsue^Svreen the parties ,• and factsTnot seated in the bill or answer is to be rejected. No interrogatories can be put to witnesses, which, do not re-
 

 ' The relation between these parties was not such as to prohibit their bargaining altogether, and invalidate every treaty between them, however fair and advantageous to • the plaintiff. The relation makes a dealing suspicious^ and imposes the burden on the executor of showing very clearly, that no advantage has been taken by him. The release is not therefore void, without proof
 
 aliunde.
 
 No proof has been, or could be offered here. The release must therefore be established as a bar to this bill. But because the circumstances, on which its validity depends, are not open in this suit, the bill will be dismissed, without prejudice to filing another for the security or recovery of the annuity, and impeaching tlie release.
 

 Per Curiam. — Decree accordingly.