## Case No. 5,816.

GRIFFIN v. CLINTON LINE EXTENSION R. CO. et al.

[1 West. Law Month. 31.]

Circuit Court, N. D. Ohio. Nov., 1858.

CORPORATE EXISTENCE BY PRESCRIPTION IN OHIO — REQUISITES OF — SEAL — SUBSCRIPTIONS TO STOCK—CREDITOR'S BILL—ESTOPPEL.

1. In Ohio, no corporation has existence by prescription, nor otherwise than by virtue of an act of the legislature; and no corporation can be created or authorized by the legislature, except in pursuance of a general statute. Special acts of incorporation are prohibited by the constitution.

2. Nor, in that state, can there be a corporation de facto, merely, except when a corporation

·de jure continues in the exercise of its functions, after a forfeiture or other extinguishment of its franchises.

3. The statute has made it essential to the ·creation of a railroad corporation, in Ohio that seals be annexed to the names of the corporators subscribed to the certificate which is re·quired to be filed in the office of the secretary of state, for that purpose.

4. The certificate filed by "The Clinton Line Extension Railroad Co." is without seals; and is, therefore, a nullity; and the company is, consequently, a mere unincorporated association.

5. In this action the complainant filed a credit·or's bill against the company, as a corporation, and against the other defendants, as debtors to the corporation, upon their subscription to its capital stock; alleging the recovery of a judgment by the complainant, in this court against the company, as a corporation, and the return of an execution issued thereon unsatisfied, and ·claiming to have the unpaid balance of the subscriptions applied to the payment of the complainant's judgment. The company allowed the bill to be taken pro confesso as against it, for want of answer. The other defendants an·swered, denying that the company was a corporation, and, consequently, denying any indebt·edness to it upon their subscriptions. The plaintiff put in a general replication. Held—that if the subscriptions of the defendants who had answered, could, in any event, be considered as es·topping them from denying that the company was a corporation, they could not have that effect, unless the facts ·constituting the estoppel were set forth by the complainant, either in his bill or his replication. But also held—

6. That the subscriptions could not constitute an estoppel; and were, at most, only prima facie ·evidence of the existence of the corporation, which the defendants who had answered, might rebut, under the issue of nul tiel record, raised by the pleadings; and that it was successfully rebutted by the fact of the want of seals annexed to the names of the associates subscribed to the certificate filed with the secretary of state.

7. An estoppel en pais arises only when the party against whom it is alleged, by his declarations, acts, or omissions, has misled the other party to a transaction to do that which will be turned to his prejudice by allowing the other party to disavow the legitimate consequences of his own acts.

8. It seems that the persons constituting "The Clinton Line Extension Railroad Company" are responsible as individuals, upon its contracts, and for its liabilities, as an unincorporated association.

[In equity. Bill by Oramel Griffin against the Clinton Line Extension Railroad Company and others.]

R. F. Paine, for complainant.
S. B. Prentiss, for defendants.

WILLSON, District Judge. This is a pro·ceeding in chancery, in which a creditor's bill is filed against the Clinton Line Extension Railroad Company, (the judgment debtor,) and Delos Phelon, and others, who are alleged to be indebted to said company for unpaid subscriptions to its capital stock. The case was heard upon bill and the answers of Phelon and Warner, and replication, and upon exhibits and testimony.

By agreement of counsel at the argument, two questions, only, were submitted for our ·consideration. These are, 1st. Has the Clinton Line Extension Railroad Co. a legal existence as a corporation? And 2nd. If said company has no legal corporate existence, then, can the subscribers to its capital stock be made liable on their unpaid subscriptions, in this mode of proceeding? In order to comprehend the real issue, and the force and effect of the evidence, as well as the just application of the law of the case, it may be well to refer to the material allegations of the parties in their pleadings. The complainant, in his bill, alleges that the Clinton Line Extension Railroad Co. is an existing corporation, created under and by virtue of the laws of the state of Ohio; that, at the November term, 1855, of this court, he recovered a judgment at law against said company for 2,122 75-100 dollars damages and cost of suit, which judgment remains in full force; that executions have been issued upon said judgment, directed to the marshal of this district, who duly returned the same, wholly unsatisfied, for the want of property of said company whereon to levy. It is further averred that the defendants, Phelon and Warner, were each subscribers to the capital stock of said company to the amount of $1,000; that by the terms of said subscriptions, that amount is due from each of them respectively, the greater proportion of which is still unpaid. The prayer of the bill is, that an account be taken of the balance due on said subscriptions, and the same be applied in satisfaction of the judgment.

To the bill, no answer, plea or demurrer has been interposed by the company. Phelon and Warner have filed answers setting forth in haec verba their contract, made in December, 1853, with the company, for taking a portion of its capital stock, which is as follows: "We, the subscribers, promise to pay to the treasurer of the Clinton Line Extension Railroad Company the several sums set against our names, for the number of shares, at fifty dollars per share, at such times, and in such instalments as the president and directors may, under their charter and by-laws, prescribe; provided always, that no collection shall be made of said stock except to defray expenses for preliminary surveys and engineering, until two hundred thousand dollars of the capital stock of said company shall have been subscribed in shares of fifty dollars each. The undersigned agree to take the amount of stock in the above road, provided said road is built inside of one hundred and fifty rods north of the centre of Huntington." And set opposite to such signatures of the respective defendants are the figures "20" and "$1,000." And the defendants, in their answers, insist that by so signing said paper, they did not become subscribers to the capital stock of said company, or stockholders in the same, nor did they assume or take upon themselves, nor was there imposed upon them, any legal or equitable obligation whatever; that said company was not at that time, or

at any time since, possessed of a legal existence as a corporation. They expressly deny the allegation in the complainant's bill, that the Clinton Line Extension Railroad Co. is an existing corporation, created under, and by virtue of, the laws of the state of Ohio; and say, that said company has never made out, acknowledged, procured to be certified and forwarded to the secretary of state, the certificate required by law, as preliminary and necessary to its existence as a corporation; but did make out a paper, purporting to be a certificate, which was not, in law or fact, a certificate, because it was not under the seals of those by whom it was signed, nor did it name the termini of said road: Wherefore they insist that said Clinton Line Extension Railroad Co. is not, and never was, a corporation, or had any legal existence as such, or any power, authority or capacity to construct any railroad, or receive subscriptions to the capital stock of any railroad, or to make any contract whatever. To the answers of these two defendants, the complainant has filed a general replication.

There is exhibited in evidence a copy of a certificate from the records of the state department, claimed to be one creating a corporation called the Clinton Line Extension Railroad Co., which reads as follows:—"Be it remembered, that we, Henry N. Day, Harvey Baldwin, Harvey C. Thompson, Edgar B. Ellsworth, and Van R. Humphrey, of Hudson, in the county of Summit, and state of Ohio, having associated ourselves together and become a body corporate with all the rights, privileges and powers conferred by and subject to all the restrictions of the act to provide for the creation and regulation of incorporated company's in this state, for the purpose of constructing a railroad; do hereby certify, that the railroad, whose construction is the object of this organization, shall be named, called and known by the name and style of the Clinton Line Extension Railroad Company. The said railroad shall commence in said town of Hudson, near the depot of the Cleveland & Pittsburgh, and Cleveland, Zanesville & Cincinnati Railroads, and at the terminus of the Clinton Line Railroad; and terminate in or near Lima, in Allen county, in said state of Ohio, at a point on the Cleveland and St. Louis Railroad; and pass through the counties of Allen, Hardin, Hancock, Wyandott, Crawford, Seneca, Richland, Huron, Lorain, Ashland, Medina and Summit, in said state of Ohio; and that the capital stock of said company shall consist of two millions of dollars." This paper bears date April 9th, 1853. It was signed by the five persons named in it, was acknowledged before a justice of the peace, certified by the clerk of common pleas, of Summit county, and duly forwarded to the secretary of state. But no seals were ever attached to the signatures of the corporators. And we are called upon in the

first place to declare the effect of this omission in creating the corporation.

By the first section of the 13th article of the constitution of the state of Ohio, it is enjoined that "the general assembly shall pass no special act conferring corporate powers." But it is, nevertheless, declared, in section 2, of the same article, that "corporations may be formed under general laws." Under this last provision, the general assembly, did, on the first of May, 1852, pass "An act to provide for the creation and regulation of incorporated companies in the state of Ohio." Swan's St. 197. This law provides that any number of natural persons, not less than five, may become a body corporate, and, in associating to form a company for the purpose of constructing a railroad, they shall, under their hands and seals, make a certificate, which shall specify as follows: 1st. The name assumed by such company, and by which it shall be known. 2nd. The name of the place of the termini of said road, and the county or counties through which such road shall pass. 3rd. The amount of capital stock necessary to construct such road; and "such certificate shall be acknowledged before a justice of the peace, and certified by the clerk of the court of common pleas, and shall be forwarded to the secretary of state, who shall record and carefully preserve the same in his office: and a copy thereof, duly certified by the secretary of state, under the great seal of the state of Ohio, shall be evidence of the existence of such company." And the act further declares, that when the foregoing provisions have been complied with, the persons named as corporators are authorized to carry into effect the objects named in said certificate.

In England, and in some of the older states of the Union, private corporations may exist by an implied assent of the power competent to create them. Corporations, however, whose existence is recognized by the common law and by prescription, are those only which have existed from time immemorial, and of which it is impossible to show the commencement by any particular charter or legislative enactment; the law presuming that such charter or act of the legislature, once existed, but that it has been lost by such accidents as length of time may produce. In Ohio no corporation exists by the mere implied assent of the state.—Under the old constitution the legislature was authorized to pass special acts conferring corporate powers. And when such special act was passed, the corporation was created. It then had a legal existence. Such charters were never granted upon a precedent condition. They might contain provisions, which were directory, in relation to organizations, or those in restriction, or those essential to the exercise of corporate powers and franchises, and these, by misuser or non-user, might work a forfeiture of the charter. But until

such forfeiture was pronounced by a court of competent jurisdiction, the corporation continued to exist and could remain in the enjoyment of its right as against all the world, except the sovereign state which created it. By the new and existing constitution, this right, in the legislature, to pass special acts, is prohibited; and its provision before referred to, that "corporations may be formed under general laws," is a clear implication that the framers of that instrument did not intend the creation of corporations, unless in conformity to these laws.

The act of 1852 does not, of itself, create railroad corporations. It simply declares the terms upon which they may be created. In other words, it prescribes conditions precedent to their existence. There is a broad distinction between that class of cases whose corporate powers are to rest upon the performance of a condition, and those where existing powers are to be divested upon a failure to perform a subsequent condition. In the case of Fire Department v. Kip, 10 Wend. 268, the supreme court of New York declares, that, where a corporation is created by a statute which requires certain acts to be done, before it can be considered in esse, such acts must be shown to have been done, to establish the existence of the corporation; and this rule was held to have no application to a corporation, which is declared to be such, by its very act of incorporation, and which does not require any acts to be performed to give effect to its charter. By observing this distinction, the adjudged cases cited by opposing counsel, and which seems to be conflicting, may be reconciled upon principle. Applying these tests to the Clinton Line Extension Railroad Company, has it obtained a legal existence as a corporation? It will not be pretended that four natural persons, associating themselves together, and conforming to all the other requirements of the law of 1852, could thereby create a legal body corporate, for railroad purposes: and it is for the reason that the law requires a greater number to be associated to accomplish that object. If the law, as a prerequisite, requires five or more persons to be thus associated for this purpose, how can any other prerequisite of the statute be dispensed with, which is equally explicit? Should the seals of the corporators be declared immaterial, why not so declare the signing, or the acknowledging, or the certifying of the clerk of the court of common pleas? Certainly, if one of these statutory requirements is unnecessary, then all of them are unnecessary; and the complainant's theory of immaterial statutory requirements, if put to practical results, will lead to the legal paradox, of lawfully doing that which is by law prohibited. The mere attaching seals to signatures upon a certificate may seem to be a matter of trifling consideration; nevertheless, it is an imperative requirement of the general railroad law of the state; and for the court in this case

to hold such an unsealed certificate valid and effectual for the purposes contemplated by the act, would be an assumption of those legislative functions, which belong exclusively to the general assembly of Ohio. The legal existence of this company as a corporation, does not arise as a collateral question. The issue of nul tiel corporation is directly tendered by the defendants in their answers. The complainant, accepts that issue by filing a general replication. In the Bank of Auburn v. Aikin, 18 Johns. 137, (a case very similar in principle to this,) the court says: "The plaintiffs ought to have replied specially, and shown how they were a corporation; for the act by which they were incorporated requires certain things to be done before the plaintiffs could become a corporation." Where, as in the case at bar, the issue of "corporation or no corporation," is made by the pleadings, the party holding the affirmative is always put to full proof. Ang. & A. Corp. §§ 631, 632.

We do not deem it necessary to consider the other alleged defect of the certificate in question, to-wit, the description of the western terminus of the road. It is sufficient to say, that on account of the want of seals to the signatures upon such certificate, the evidence fails to establish the allegation of the bill, that "the Clinton Line Extension Railroad Company is a corporation created under and by virtue of the laws of Ohio." But it is contended, that if this company is not a corporation de jure, it is, nevertheless, one de facto; and being such, the defendants, as subscribers to its capital stock, are precluded, by way of estoppel in pais, from denying their liability. The general policy of the law, in relation to this kind of estoppels, is, that admissions, whether of law or of fact, which have been acted upon by others, are conclusive against the party making them in all cases between him and the person whose conduct he has influenced. And this comprehends, is is said, not only all those declarations, but also that line of conduct, by which the party has induced others to act, or has acquired any advantage to himself. In such case the party is estopped, on grounds of public policy and good faith, from repudiating his own representations. But admissions, though in writing, not having been acted upon by another to his prejudice, are not conclusive against the party making them, but are left at large to be weighed with other evidence in the suit. It is, after all, a matter relating to the evidence, having application or not, according to the nature and exact issue of the parties in the particular case.

The question now is, whether the complainant, upon the issue made, should be permitted to produce proofs to show this company to be a corporation by virtue of its own acts, independent of a grant of power from the state. It is a fundamental maxim, both in courts of chancery and of law, that no proof

can be admitted of any matter not noticed in the pleadings. 1 Vern. 483; 11 Ves. 240; Langdon v. Goddard [Case No. 8,060]; 14 Johns. 501. This maxim has been adopted in order to obviate the great inconvenience to which parties would be exposed, if they were liable to be affected by evidence at the hearing, of the intention, to produce which, they had received no notice. Hence, proofs taken in a cause must be pertinent to the issue in that cause, secundum allegata. 2 Johns. Ch. 339.

The question made by the pleadings here, relates solely to the creation and existence of the Clinton Line Extension Railroad Company as a corporation under the laws of Ohio. That is the issue. No facts are alleged in the bill which constitute an estoppel, nor are any grounds stated, upon which the defendants should be precluded from denying the corporate existence of the company. Had the complainant relied upon any facts, which, if proved, would operate as an estoppel, suitable averments of those facts should have been made in the bill, or in the replication to the answers of the defendants. Such a state of the pleadings would have presented an issue, entirely different in its character from the one we are called upon to determine. At the hearing of the cause, the complainant, besides the certificate already referred to, produced in evidence, subject to exception, certain acts of the company, such as opening books for and receiving subscriptions to its capital stock—electing officers of the company—issuing bonds for money, and entering upon the construction of the road, &c.

By the rules of law governing the case, this proof of the acts of the company was clearly admissible, as it had no tendency to establish any of the allegations contained in the bill; and it ought, therefore, to be rejected as impertinent to the issue. But, suppose a different ruling should obtain, and this class of proof be admitted, to show the existence of a corporation de facto, as contradistinguished from a corporation de jure; how, under the constitution and laws of Ohio, can it avail the complainant? Can there, in fact, be a corporation in Ohio which was never legally created? If so, what is the measure of its rights, and what the extent of its powers? There being no constitutional or legislative authority under which it exists, there can be no legislative measure of its powers, rights and duties, or any restriction and limitation of its existence in perpetuity. If the mere associating of natural persons and their acting and claiming to act as a body politic and corporate makes them such, then corporations may be created otherwise than by the supreme legislative authority of the state, and such self-created corporations must, by parity of reasoning, and necessity, not only fix and determine their rights, powers and authority, and their relation to others, but also the extent of those rights and powers,

and of that authority when brought in conflict with the power and authority of the state. To say that there can exist a self-creating power, equal to that conferred by the constitution upon the legislature, is in effect to declare the constitution a nullity, and the general assembly, as a co-ordinate branch of the government effete, and powerless in legislation.

It is clear, then, that a corporation cannot exist for any purpose, in Ohio, unless it has been created under and by virtue of the laws of the state. It is, nevertheless, contended by counsel that the defendants are not in a position, where they can deny the existence of this corporation, they having contracted with it as such. In other words, it is claimed, that whoever contracts with a pretended corporation is, by force of his contract, estopped from denying its existence; and a great number of authorities are cited in support of this proposition. The general rule to be deduced from the authorities, is, that a corporation, in a suit brought by it, must prove its corporate existence by the production of its charter; but if the action is upon a note or other written contract, the production of the note or contract dispenses with the proof of its charter, as the defendant's admission in such paper affords prima facie evidence of the corporate existence of the plaintiff; and this proof is sufficient in the action, until rebutted by proof from the defendant. Or, as the rule is more concisely stated by Ang. & A. Corp. p. 694: "Where a cognizance, mortgage, note or other instrument of writing is given, to a corporation, as such the party giving it is thereby estopped from denying the existence of the corporation; and no further proof is necessary until such proof is rebutted." But where the issue of "corporation or no corporation" has been directly made by the pleadings, no case can be found denying the right to make the inquiry touching the lawful creation of the corporation. The cases cited are those in which corporations had an original legal existence, but in consequence of a failure to comply with some of the requirements of their charters, their rights had been forfeited. In such cases, and where they continued in the exercise of their chartered powers after forfeiture incurred, the courts have called them, in legal parlance, "corporations de facto." Their rights in strict law having been forfeited, nevertheless, remain without interference from the courts, unless on the complaint and at the instance of the state, in a proceeding to divest them of their corporate powers and franchises. Further than this, the doctrine of estoppels, as applied to corporations, has never been carried by the courts in any well considered case. As thus understood in its application it is a rule founded in reason and common sense. Nor can its operation work injustice to a creditor of any pretended corporation.

A corporation at best is but a mere crea-

tion of the law, and derives all its powers and capacities from the law of its creation, and being thus created, it must, in all cases where it attempts to act, show that by its charter of creation it has powers so to act. If this company never existed as a corporation, it certainly had no power to contract, as such, either with subscribers to its stock or with any other persons for any purpose. The members thus associated, had neither the rights, the powers or the immunities of a corporation. In contracting debts with third persons under the name of the "Clinton Line Extension Railroad Company," they assumed the responsibilities and were subject to the liabilities of a private association, having a community of interest. And holding that relation to the public, the rights and remedies of a creditor of the company are as well defined as those governing other private persons associated and acting together for common and mutual benefits. From a careful consideration of the case, we are constrained to hold in the negative upon both propositions submitted, to wit, that the Clinton Line Extension Railroad Company is not a corporation; and that the subscribers to its stock can not be made answerable upon their subscriptions in this mode of proceeding. The bill is accordingly dismissed.