## GEORGE W. REED AND ANOTHER vs. ALBERT LATHAM.

The defendant employed an agent to sell a quantity of brandy, and he sold the same to the plaintiffs, to be delivered upon their order within thirty days; but no memorandum of the sale was made. Within the thirty days the plaintiffs demanded the brandy and the defendant refused to deliver it; and upon a second demand made a second refusal. Two months after the sale the plaintiffs drew up a memorandum of the sale, dating it back to the day of the sale, and requested the agent to sign it for the defendant; which he did, signing the defendant's name by himself as agent; the defendant having no knowledge of the transaction. Held that the defendant was not bound by the memorandum.

The defendant had previously paid the agent for his services, and had thus in effect terminated his agency; but the fact that the plaintiffs knew that the defendant had refused to carry out the contract, and that the action ·of the agent was without his knowledge and against his will, were regarded as sufficient to render his act of no effect.

ASSUMPSIT, for breach of a contract to deliver a quantity of cider brandy; brought to the Superior Court in the county of New Haven. The following facts were found by a committee:

In the latter part of June, 1871, the defendant, who resided in Granby in this state, employed one Willis Phelps of Granby to sell for him the brandy in question, and delivered to him a sample of it for the purpose. At the same time Phelps told the defendant that he had been selling brandy at the rate of $1.50 per gallon, and that that was the probable market price; to which the defendant made no objection.

It was then understood between the defendant and Phelps, that Phelps should not be considered his agent, in order that he should not incur a supposed liability to the United States government for not obtaining a license as agent, but no such understanding was ever communicated to the plaintiffs until after the commencement of the present suit.

A few days after this Phelps showed the sample to the plaintiffs at their store in New Haven, and offered to sell them the brandy at the rate of $1.50 per gallon, telling them whose it was, and left the sample with them, but nothing was said between them as to whether the sample should constitute part delivery of the brandy, and there was no other delivery of any part of the brandy. They replied that they had not time to examine the brandy themselves, but if he would examine it and should find it as good as the sample, they would buy it at that price, delivered at the Granby railroad depot, in parcels as they should desire them shipped, to their order, within thirty days, and that they would see him again or write to him. Accordingly Reed, one of the plaintiffs, saw Phelps at Granby, on the 4th of July, 1871, and was told by him that he had examined the brandy and it was all right, and thereupon Reed told him the plaintiffs would take it. Phelps replied that he would see the defendant, and report the next morning what he said. The following morning, July 5th, Phelps saw Reed and told him it was all right, and that the goods should be subject to the plaintiffs' order for thirty days. Both Phelps and Reed at that time supposed

that the goods would be delivered at the Granby depot as the plaintiffs should direct, within the next thirty days.

Between the interview in New Haven and that of July 5th, 1871, Phelps told the defendant that the plaintiffs had requested him to examine the brandy and see if it was as good as the sample; and Phelps did examine it, and told the defendant that the plaintiffs would take it at the price named and that the plaintiffs would probably see the defendant about it; to all which the defendant made no objection. No understanding was communicated to the plaintiffs to the effect that they were to see the defendant.

On the 27th of July, 1871, the plaintiffs, by a messenger, requested the defendant to ship the brandy; but he refused. The brandy at that time was worth to the plaintiffs $2 per gallon. On the 7th of August, 1871, the plaintiffs again by a messenger requested the defendant to ship the brandy. He refused, saying there had been no contract for it. There was no evidence that this remark was ever communicated to the plaintiffs.

On the 19th day of August, 1871, the defendant paid Phelps $5 for his services in the matter. There has never been any formal revocation of his authority in the premises, nor any formal termination of it, further than is implied in the foregoing facts, and no notice to the plaintiffs of any such revocation or termination or of such payment.

On the 7th of September, 1871, the plaintiffs presented to Phelps the following writing and asked him to sign it, which he did: "I this day sold Messrs. Reed and Mosely of New Haven, Conn., twenty bbls. cider brandy at $1.50 per gal., to be delivered to them at Granby depot at any time they may see fit to order the same, within one month from this date: Dated at Granby, July 5, 1871. ALBERT LATHAM, by WILLIS PHELPS, *Agent.*"

Afterward, on the same day, the plaintiffs again made demand on the defendant to ship the brandy, which he refused. The defendant at that time offered to let the plaintiffs have it at $2.00 per gallon. He had no personal knowledge, until the hearing before the committee, of the signing of the writing.

If upon these facts the plaintiffs were entitled to recover, the committee found due to them as damages the sum of $315, with interest thereon from July 27th, 1871.

The court (*Sanford, J.*) upon these facts rendered judgment for the defendant, and the plaintiffs brought the record before this court by a motion in error, assigning as error that the court erred—1st, in deciding that the agent had no authority to sign the memorandum of sale, under the circumstances of the case ; and 2d, in ruling that an agent has no authority to sign a memorandum of sale, required by the second section of the statute of frauds, after the agreement has in fact been completed.

*H. Stoddard,* for the plaintiffs.

*Maltbie,* for the defendant.

PARK, J.  The contract of sale, in this case, was clearly within the statute of frauds at the time it was made.  The plaintiffs concede this, but they insist that the note or memorandum of the sale, signed two months after the sale was made, by the agent who negotiated the sale for the defendant, relieved the contract of the objection arising from the statute of frauds.  But it appears in the case that, previously to the signing of the memorandum, the defendant on two different occasions refused to forward the goods when requested so to do by a messenger sent by the plaintiffs.  The defendant thereby substantially informed the plaintiffs that he did not consider himself bound by the contract, and should not comply with its terms.

It further appears that, sometime before the signing of the memorandum, the defendant paid his agent, who negotiated the sale, for his services in that transaction, and thereby virtually gave him to understand that his agency in the matter was at an end.

It further appears that the signing of the memorandum was without the knowledge or consent of the defendant, and the fact that the plaintiffs procured it to be done so long after the sale was made, and after the defendant had twice refused

to forward the goods, shows that they fully understood that the defendant had refused to be bound by the contract, and that they were seeking in a clandestine manner to make him bound.

We think that when this memorandum was signed the agent had no authority to bind his principal, and especially to these plaintiffs, knowing as they did that this action of his was without the defendant's knowledge and against his will.

There is no error in the judgment complained of.

In this opinion the other judges concurred.