LEWIS W. TERWILLIGER, Respondent, v. THE ONTARIO, CARBONDALE AND SCRANTON RAILROAD COMPANY, Appellant.

1. AGENCY — EFFECT OF REVOCATION. An authority once given if revoked before execution, except where an element of estoppel intervenes, is, as a general rule, the same as to third persons as though it had never existed.

2. REVOCABILITY OF AGENCY — NAKED AUTHORITY. Revocation of a mere naked authority in the execution of which an agent has no other interest than that which springs from his employment as agent and his right to earn his compensation, may be made at any time at the pleasure of the principal so long as the authority is not executed.

3. Irrevocable Agency — Consideration for. Oral authority to sell personal property and receive the pay therefor, given by the owner to another person, may be irrevocable if it was given for a valid consideration within the law applicable to executory contracts.

*Terwilliger* v. *O., C. & S. R. R. Co.*, 73 Hun, 335, reversed.

(Argued February 27, 1896; decided April 7, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 21, 1893, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought to recover the purchase price of 1,224 railroad ties, alleged in the complaint to have been sold and delivered by the plaintiff to the defendant in the months of February and March, 1890, for the price of $602.55.

The answer, among other things, alleges that the plaintiff, for a good and valuable consideration, authorized one Marvin D. Wheeler to sell the ties to the defendant, and to receive the pay therefor for his own use, and that thereafter Wheeler sold the ties to the defendant, and that the defendant paid him therefor in full. The issues were referred to a referee for trial. It was found that the ties were cut by the plaintiff in the winter of 1888, on his land in Pennsylvania; that during the winter of 1889 and the spring of 1890 he drew the ties and delivered them to the defendant on the line of its road; that the defendant received and used them, and that in June, 1890, the defendant paid Wheeler for the ties the full purchase price. There was no substantial controversy as to the facts above stated. But the right of Wheeler to sell the ties and to receive the pay therefor was sharply litigated on the trial. The plaintiff denied that he ever gave Wheeler any authority to sell the ties, and claimed that they were delivered by him to the defendant under a contract of sale made by him as owner, with the defendant, and that the payment to Wheeler was unauthorized, and constituted no defense to the action. On the other hand, the defendant called as witnesses Wheeler and other persons, who gave evidence

tending to show that in the summer of 1889, the plaintiff
verbally authorized Wheeler to sell the ties to the
defendant; that in the fall of that year Wheeler entered into
an oral contract with the purchasing agent of the defendant
to sell the ties to the company for a price agreed; that pur-
suant to Wheeler's request the plaintiff delivered the ties to
the defendant in fulfillment of Wheeler's contract with the
company.

The referee did not in terms find that the plaintiff entered
into any contract to sell the ties to the defendant. But he
found that the plaintiff was the owner of the ties; that in
October, 1889, he had a conversation with the chief engineer
of the defendant in the construction of its road, in which the
engineer informed him that the defendant would take the said
ties; that relying upon this statement the plaintiff delivered
the ties upon the line of the defendant's road; that they
were afterwards inspected by one of the engineers of the
company and returned by him to the company April 1, 1890,
as the ties of the plaintiff; that subsequently the company
took and used the ties; that they were of a specified value
and that the defendant had not paid the plaintiff for the ties
or any part thereof. The referee refused to pass upon a
question much litigated on the trial, namely, whether a verbal
agreement had been made between Wheeler and the plaintiff
in the summer of 1889, by which Wheeler was authorized to
sell the ties and apply the proceeds in payment for certain
timber and ties cut by the plaintiff on Wheeler's land. The
referee placed his refusal to pass upon this question on the
ground that if such agreement was made it was revoked by
the plaintiff before the authority was exercised, the referee
stating " that the acts of the plaintiff and the return of the
ties as plaintiff's to the defendant by its engineer, as set forth
in the finding of fact herein, done subsequent to the making
of the alleged agreement, was a repudiation and revocation
thereof, and that the acts of the plaintiff as so found were
sufficient notice to the defendant of such revocation." The
defendant excepted to the refusal of the referee to pass upon

this question of fact.  A proper understanding of the question of law presented by the exception requires a brief reference to the evidence on behalf of the defendant in respect to the alleged authority to Wheeler.  It appeared from the evidence that, in the year 1888, Wheeler and the plaintiff owned adjoining farms; that in that year the plaintiff, while engaged in lumbering, had, as was assumed, by mistake, cut a considerable amount of pine and other lumber on Wheeler's land, which the plaintiff had placed in rafts, together with lumber cut on his own land, which were in the river in or near Bordentown.  Subsequently, the fact of the cutting on his land came to Wheeler's knowledge.  Negotiations were then commenced between the parties for an adjustment.  Wheeler stated that he would be satisfied to receive the value of the "timber share," which, according to the defendant's evidence, would be about $1,300.  By arrangement, the plaintiff authorized Wheeler to sell two of the rafts to apply on this claim. The rafts were sold and the proceeds were applied, leaving unpaid, after such application on the "timber share," five or six hundred dollars.  Wheeler then requested the plaintiff to pay him the balance due him out of the proceeds of another part of the timber which the plaintiff had sold to one Cockroad.  The plaintiff said he needed to use the money coming from that sale, and wanted Wheeler to take his pay out of the ties in question, lying on the plaintiff's land.  It was then agreed between them, in substance (according to the testimony of Wheeler), that Wheeler might sell the ties to the defendant for Erie prices and take the proceeds to apply on the "timber share."  Wheeler thereupon entered into a verbal contract to sell the ties to the defendant, of which sale the plaintiff was advised by Wheeler, and he assented thereto.  In the fall, Wheeler requested the plaintiff to deliver the ties on the defendant's road, and they were drawn there by the plaintiff and subsequently taken and used by the defendant, and the company paid Wheeler, as before stated.  The referee places the finding of a revocation of the authority given to Wheeler (which authority, for the present purpose, must be assumed)

on his finding that the plaintiff, before the delivery of the ties, had a conversation with the defendant's engineer, which was followed by a delivery of the ties by him to the defendant, and that, in the bill of the ties sent by the engineer to the purchasing agent of the defendant, they were returned as the plaintiff's, and he was named as the vendor. The purchasing agent changed the bill by inserting the name of Wheeler as vendor, and the voucher was made out in Wheeler's name and he subsequently received payment. It is not claimed that any notice of revocation was given by the plaintiff to Wheeler. Wheeler sold the ties in his own name without (so far as appears) disclosing his agency to the defendant.

*Isaac H. Maynard* for appellant. The referee erred in holding as matter of law that the evidence of the defendant and its witnesses establishing an agreement between plaintiff and Wheeler, by the terms of which Wheeler was authorized to sell the ties to the defendant and receive the pay therefor, did not, even if true, constitute a defense to the action. (Story on Agency, §§ 476, 477, 478; *Missouri* v. *Walker*, 125 U. S. 339; *Jeffries* v. *M. L. Ins. Co.*, 110 U. S. 305; *In re Grapel* v. *Hodges*, 112 N. Y. 419; *F. L. & T. Co.* v. *Wilson*, 139 N. Y. 284; 4 R. S. [8th ed.] 2591; *Schwinger* v. *Raymond*, 83 N. Y. 192.) The plaintiff failed to establish the cause of action alleged in his complaint, and the referee has not found that the cause of action so alleged was established, and the complaint should, therefore, have been dismissed. (*Romeyn* v. *Sickles*, 108 N. Y. 650; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Southwick* v. *F. Nat. Bank*, 60 How. Pr. 170.)

*Arthur More* for respondent. The plaintiff was entitled to recover the value of the ties upon a *quantum meruit*. (*Taylor* v. *Pinkney*, 3 N. Y. S. R. 158; *Sussdorff* v. *Schmidt*, 55 N. Y. 320; *Rhodes* v. *Mattfield*, 11 Wkly. Dig. 126.) The referee in fact actually passed upon the requests to find that plaintiff sold the ties to Wheeler, or authorized him to sell them, determining the fact in the negative. "Not

found," implies that the referee had passed upon the request. (*Davis* v. *Leopold,* 87 N. Y. 621.)

ANDREWS, Ch. J.  The principal question on this appeal arises on the exception by the defendant to the refusal of the referee to make any finding upon the question whether the plaintiff in the summer of 1889 authorized Wheeler to sell the ties to the defendant and apply the proceeds of the sale in payment for the timber which had been cut by the plaintiff, without authority, from Wheeler's lands.  The evidence upon this question was conflicting.  The defense rested substantially upon the assertion that such authority was given; that it was executed by a sale and delivery of the ties thereunder, by Wheeler, to the defendant, and that the defendant having subsequently paid Wheeler therefor, the debt was discharged. The refusal of the referee to pass upon the question of Wheeler's original authority was put upon the ground that, assuming it to have been given, it was subsequently revoked by the act of the plaintiff in himself selling and delivering the ties to the defendant.  It became, therefore, as the referee held, an immaterial issue, which if found in favor of the defendant would not affect the result, since by the general rule an authority once given, if revoked before execution, except where an element of estoppel intervenes, is the same as to third persons as though it had never existed.  The primary question presented by this ruling of the referee involves an inquiry into the nature of the authority given by the plaintiff to Wheeler.  It is to be conceded, for the purpose of this appeal, that Wheeler possessed the authority which the evidence on the part of the defendant tended to establish, and that it was conferred for the purposes which by direct evidence or by fair inference can be collected from the evidence most favorable to the defendant.  If the authority conferred on Wheeler was a mere naked authority, by which we understand an authority in the execution of which the agent has no other interest than that which springs from his employment as agent and his right to earn his compensation, then according to the

general rule it was, while executory, revocable at any time
at the pleasure of the plaintiff. In case of a naked power,
the authority of the agent, derivative and not original, ceases
when the principal, for whatever reason, withdraws the dele-
gation and terminates the agency. There is a qualification of
the rule where the agent has entered upon the execution of
the authority before revocation, and has so bound himself that
a retraction of the authority would subject him to liability.
In such cases the principal cannot revoke the authority as to
the part of the transaction remaining unexecuted, at least not
without indemnifying the agent. (*Gelpcke* v. *Quentell*, 74 N.
Y. 599; *Hodgson* v. *Anderson*, 3 Barn. & Cres. 842; *Blasco*
v. *Fletcher*, 14 C. B. [N. S.] 147; *Goodwin* v. *Bowden*, 54
Me. 424.)

But an authority may be irrevocable by reason of its pur-
pose and the circumstances attending its creation. The cases
of an authority coupled with an interest are of this character.
What constitutes an authority coupled with an interest was
considered in one of the masterly judgments of Chief Justice
MARSHALL in *Hunt* v. *Rousmanier* (8 Wheat. 174). In that
case the owner of an interest in a certain vessel then at sea, to
secure a loan of money, executed to the lender contemporane-
ously with the loan, a power of attorney, authorizing him to
sell the borrower's interest in the vessel, which power, by its
terms, was to become void on payment of the loan. The
borrower died before payment, and the question was pre-
sented whether his death operated to revoke the power. It
was decided that the power was revoked by the death of the
grantor. The general doctrine that a power must be exer-
cised in the name of the principal and does not survive his
death was held to be applicable. But the court, in the decis-
ion of the question, proceeded to consider the exception to
the rule in cases where the power was coupled with an inter-
est and to define the meaning of that phrase. In a luminous
statement the chief justice confined the scope of the excep-
tion to cases where, together with the power, there was vested
in the donee an estate, right or interest in the subject of the

power, as distinguished from an interest in the proceeds of the power when exercised. In the former case he declared that the power would not be extinguished by the death of the creator of the power, because it attached to the estate of the donee in the subject of the power, and was capable of execution in his own name after the death of the principal, unlike cases where the power was unconnected with any interest in the thing itself, and the only interest was in the execution of the power. The distinction between the cases of a power given for the purpose of security and a power given for the same purpose, but supplemented by a transfer of an interest, seems technical; but in the latter case it at least preserves the substance and effectuates the intent, while it obviates in the particular case the general doctrine that a power is determined by the death of the creator of the power. In *Watson* v. *King* (4 Camp. 272) Lord Ellenborough, in a case very similar to that of *Hunt* v. *Rousmanier*, also held that a power of attorney to a creditor to sell a vessel was revoked by the death of the principal, and upon the same ground, namely, that it could not thereafter be executed in his name. The same point was ruled in equity in *Lepard* v. *Vernon* (2 Ves. & B. 51), where it was held that a power given to a creditor to receive a debt, expressly for the purpose of liquidating the claim, unaccompanied, however, by any assignment of the debt, was revoked by the death of the principal. *Knapp* v. *Alvord* (10 Paige, 205) is an illustration of a power coupled with an interest. There a power of attorney to sell a stock of goods and apply the proceeds upon liabilities incurred and to be incurred by the donee of the power was given, accompanied by the possession of the goods, and it was held that it was not revoked by the death of the principal, because it was a power coupled with an interest. The fact that the possession of the goods accompanied the power was the controlling point in the decision. Testamentary powers from their nature necessarily survive the death of the testator. They usually accompany some estate given by the will to the donee of the power, or are regarded as trusts, which, if

accepted, the donee is in conscience bound to execute. (See *Franklin* v. *Osgood,* 14 John. 526.) There are other familiar cases of irrevocable powers, because coupled with an interest, such as powers of sale accompanying mortgages, or powers to do other acts affecting real or personal property, to make effectual an interest or right in the subject of the power vested in the donee, and to which the power is auxiliary. Powers of this character are neither revocable by the grantor of the power, nor are they revoked by his death. (*Bergen* v. *Bennett,* 1 Ca. Cas. in Error, 1.) Chief Justice MARSHALL's definition of powers, coupled with an interest, has been generally accepted in this country, but in some cases his classification has not been accurately observed. (See *Hutchins* v. *Hebbard,* 34 N. Y. 24.) Indeed, the English courts give a wider meaning to the phrase than in the close definition of Chief Justice MARSHALL. In *Watson* v. *King* (*supra*) Lord ELLENBOROUGH speaks of the power in that case as a power coupled with an interest, and in *Smart* v. *Sandars* (5 C. B. 895) WILDE, C. J., referring to the authorities, said : " The result seems to be that where an agreement is entered into on a sufficient consideration, whereby an authority is given for the purpose of securing some benefit to the donee of the authority, such an authority is irrevocable. This is what is usually meant by an authority coupled with an interest." The distinction between the English and American cases is rather in words than substance. Upon the same facts the decisions in both judicatures are the same. Both in *Hunt* v. *Rousmanier* and *Watson* v. *King* the death of the principal was held to revoke the power, although in one case it was regarded as a power coupled with an interest, and in the other that it was not.

But there are a class of powers which are irrevocable by the act of the principal, although they do not come within Chief Justice MARSHALL's definition of powers coupled with an interest. This is clearly recognized by that eminent judge in the case to which reference has been made. After stating the general rule that a power may at any time be revoked

by the party conferring it, he says: "But this general rule which results from the nature of the act has sustained some modification. Where a letter of attorney forms part of a contract and. is security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms,· or if not so is deemed irrevocable in law," and he proceeds to state that the power to sell the vessel by Rousmanier in that case could not have been revoked by him during his life, but not being a power coupled with an interest it was revoked by his death. Kent uses similar language. He says (2 Kent Comm. 644): "But where it (power of attorney) constitutes part of a security for money, or is necessary to give effect to such security, or where it is given for a valuable consideration, it is not revocable by the party himself, though it is necessarily revoked by his death." And Story in his work on Bailment (§ 209) says: "But if it is given as part of a security, as if a letter of attorney is given to collect a debt as a security for money advanced, it is irrevocable by the party." This doctrine has support in adjudged cases. (*Hunt* v. *Rousmanier*, *supra* ; *Walsh* v. *Whitcomb*, 2 Esp. 566 ; *Gaussen* v. *Morton*, 10 B. & C. 731 ; *Hutchins* v. *Hebbard*, *supra* ; WILDE, C. J., *Smart* v. *Sandars*, *supra* ; *Raymond* v. *Squire*, 11 John. 47.)

In the cases referred to the authority was conferred by formal written powers of attorney. But unless an authority given is for the performance of some act which by statute or by the common law the agent cannot perform in the name of his principal unless thereunto authorized in writing, we can perceive no legal distinction in the application of the doctrine, between formal written power and an informal oral authority. Under the Statute of Frauds an authority to an agent to create certain estates or interests in land must be in writing, but he may bind his principal by a contract for the sale of land, although his authority is oral merely. (2 Kent, 613.) The validity of an oral authority for the sale of chattels is undoubted. If the authority is given as a security and based upon a sufficient consideration, so that if it had been in writ-

ing it would have been irrevocable, there is no reason in law why the oral authority should not be irrevocable also.   An oral mortgage of chattels was valid at common law, although the mortgagor retained possession, the only consequence being that retention of possession was a badge of fraud.   Since the Statute of Frauds a mortgage of chattels, being a conditional sale, must be · brought within its provisions, and statutes requiring registration make chattel mortgages not filed void as against creditors and purchasers.   The almost uniform practice, therefore, is that chattel mortgages are made in writing, but we suppose an oral mortgage of chattels for less than $50· would now be valid as between the parties. (*Bank of Rochester* v. *Jones,* 4 N. Y. 497; *Ackley* v. *Finch,* 7 Cow. 290; Jones on Chattel Mortgages, § 2 and cases cited.)   There are restrictions on the power of contract where parties undertake to give by contract a legal effect to transactions ·different from that which the law attaches.   The contract of pledge may furnish an illustration.   It is at least very doubtful whether, under our law, parties can by contract dispense with delivery of possession as the incident to the creation of a valid pledge of chattels.   It would be an attempt to subvert one of the essential characteristics of the contract of pledge as defined by the common law.   But where no statute is in the way and the law has affixed no restriction directly or by implication, parties are free to contract as they choose, and the form of the contract is immaterial. ·  Freedom of contract is the prevailing principle of the common law, and, as has been stated, unless the statute has interposed, or in the nature of the subject a writing is requisite, oral contracts are as binding upon the parties as contracts in writing. ·It is obvious that a written power, declaring the authority intended to be conferred, is a protection against mistake and fraud.   But there is no statute, nor any rule of the common law, nor any consideration of public policy which requires that an authority to be irrevocable must be in writing.   In *Hutchins* v. *Hebbard* (*supra*) the written power ·authorized the attorney to collect and receive certain moneys from the state.   It was on its face a mere ·

nakèd power, revocable at the pleasure of the principal. But it was held that oral proof was admissible to show that it was intended as a security for indorsements made by the person to whom the power was given, and upon the proof of this fact his right to the fund was established.

The oral authority given by the plaintiff to Wheeler to sell the ties (which must here be assumed), if it were a naked power, was not so far executed at the time of the alleged revocation that the right to revoke it had been lost. The verbal contract, which before that time had been entered into between Wheeler and the defendant for the sale of the ties, was not binding upon either party. The contract was for the sale of chattels exceeding $50 in value, and while the terms of the sale were definitely fixed, there was neither writing, delivery nor part payment so as to take the contract out of the statute. The plaintiff was not bound to complete the sale (*Farmer* v. *Robinson*, 2 Camp. 339, note; *Reed* v. *Latham*, 40 Conn. 452), and as between himself and Wheeler he could revoke the authority of the latter (if a mere naked power), since the contract entered into by the agreement had not been so far executed as to subject him to any liability. If the authority to Wheeler was irrevocable, it was because of the nature, consideration and purpose for which the agency was constituted. Unless there was a consideration for the authority conferred on Wheeler to sell the ties and apply the proceeds on his claim, it is plain that it was not irrevocable. (*Raleigh* v. *Atkinson*, 6 M. & W. 670.) Without going into particulars, it is sufficient to say that the evidence given on the part of the defendant would, in our opinion, justify an inference that Wheeler accepted the arrangement proposed by the plaintiff, and forbore the pursuit of his lumber or its proceeds, in reliance upon the authority given him by the plaintiff to sell the ties and apply the proceeds on his claim.

The position of an agent holding an irrevocable power for the sale of chattels, not connected with possession of the property or any interest in the nature of a title, general or special,

in the subject of the power, is peculiar. The power usually given as a security has some analogy to a pledge or lien, although distinct from either. It bears a closer resemblance to the hypothecation of the Roman law, where by force of the contract, without any transfer of possession, a right attaches to the property in the person to whom the hypothecation is made. But unlike the case of an hypothecation, the attorney, where no estate or possession passes with the power, has only a contract right. The fact that possession does not go with the power, subjects the holder of the power to the risk that the purpose of the power may be frustrated by a transfer by the owner of the chattels to a purchaser in good faith for value, without notice.

It will be for the court or jury on a new trial to determine upon the facts found whether there was any valid consideration within the law applicable to executory contracts, to uphold the authority. If such consideration existed, then we are of the opinion that the authority was irrevocable, and that the payment by the defendant to Wheeler, under the contract made with him, was binding upon the plaintiff. In our opinion, the referee erred in refusing to find upon the question of authority in Wheeler to sell the ties and apply the proceeds on his claim. If no such authority existed, there is no defense to the action. If it was given, but was not based upon any consideration which the law deems sufficient to uphold an executory contract, we are then of opinion that it was revocable, and that it was a question of fact upon the evidence whether there was an actual revocation before the defendant paid Wheeler.

The judgment should be reversed and a new trial ordered.

All concur, except MARTIN, J., not sitting.

Judgment reversed.