244W74 Owners LLC v Haruvi (2025 NY Slip Op 50058(U))

[*1]

244W74 Owners LLC v Haruvi

2025 NY Slip Op 50058(U)

Decided on January 22, 2025

Civil Court Of The City Of New York, New York County

Stoller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 22, 2025
Civil Court of the City of New York, New York County

244W74 Owners LLC, Petitioner,

against
Michelle Haruvi and Katie Umekubo, Respondent.

Index No. 304452/2023

For Petitioner: Marybeth Hotaling
For Respondent: Simon Rieff

Jack Stoller, J.

244W74 Owners LLC, the petitioner in this proceeding ("Petitioner"), commenced this holdover proceeding against Michelle Haruvi ("Respondent"), and Katie Umekubo ("Co-Respondent"), another respondent in this proceeding (collectively, "Respondents"), seeking possession of 244 West 74th Street, Apt. 2C/D, New York, New York ("the subject premises") on the allegation of termination of a license. Respondent interposed an answer. The Court held a trial on May 20, 2024 and November 4, 2024. Before Petitioner rested, Respondents moved for dismissal pursuant to CPLR §4401. The Court adjourned the application to January 15, 2025 for the parties to brief their positions on the matter.
The trial record
Petitioner submitted into evidence a deed showing that Petitioner is the owner the building in which the subject premises is located ("the Building").
Arthur Haruvi ("the Shareholder") testified that he is the shareholder of Petitioner; that Respondent is his daughter and that Co-Respondent is Respondent's wife; that a few years before his testimony he verbally gave Respondents permission to live in the subject premises; that Respondents live in California; that Respondents could live in the subject premises occasionally when they were in New York, which was a few times a year for a week or two at a time; that there is no lease; that Respondents have not paid any rent; and that Respondents have keys.
The Shareholder testified on cross-examination that the subject premises had formally been two apartments; that the two apartments were combined about five or six years ago; that he did not remember if Respondents lived in the subject premises before or after it was consolidated from two apartments; that one of the apartments was vacant for a long time; that a tenant had [*2]been living there in the past; that no other family is there; that Respondent's mother did not live in the subject premises; that Respondent did not live in the subject premises before that; that he also has a daughter named "Aileen"; that he gifted Respondents the subject premises because they are family; that Respondent referred to the subject premises as her forever home; that he was willing to have Respondents occupy the subject premises indefinitely at the time that he gifted the subject premises to them; that he did not know why this case is being brought; that Peter Hungerford ("the Agent") has been managing the business of the real estate portfolio for the past two years; that the Shareholder had been managing the business before that; that the Agent is not a member of Petitioner; that the Agent is not the owner of Petitioner; that he authorized the service of the predicate notice; that he did not remember why he had the predicate notice served; that he did not want Respondent to be evicted; that this case went to trial because he made a big mistake; that he did not want to go to trial; that he did not want to proceed to evict; that he did not see the predicate notice before it was written; that he did not recall ever seeing the predicate notice or the petition before; that he did not ask or authorize the Agent to sign a notice to vacate; that he learned that there was an eviction proceeding against Respondent just now in Court; and that he did not authorize Petitioner to commence this proceeding against Respondent.
Respondents submitted into evidence an affidavit from the Agent stating that the Shareholder did not oppose the commencement of this proceeding.
The Shareholder testified on cross-examination that he did not speak with the Agent about the commencement of this proceeding before the day of trial; that he knows "Simry Holding LLC"; that Respondents had his permission to live in the subject premises in January of 2023; that he did not revoke Respondents' permission to occupy the subject premises; that Respondents are not and were never squatters; and that Petitioner owned the subject premises as of a few years ago.
The trial then continued to its second day. Respondents' cross-examination of the Shareholder had not been completed at that point. The Shareholder did not appear on the second day of trial.
The Agent testified that he is a member of the ownership group of the subject premises, the managing agent and property manager; that Respondents came to occupy the subject premises at two separate times and combined the units in 2019 by the Shareholder, who is Respondent's father; that the Shareholder told him that; that he gained an interest in Petitioner in May of 2022; that files for the subject premises ended in 2014 and 2019; that he was told that the Shareholder gave possession of the subject premises to Respondents because they were family; that he diligently searched the record and did not find a lease and did not find any record of rent having been paid; that he had a predicate notice served because Respondents did not have a lease or pay rent; and that he discussed this proceeding with other members of the LLC.
Petitioner submitted into evidence a property management agreement signed by the Agent for all parties to the agreement. The Agent testified that he did not need the Shareholder's signature on this document, but he needed the Shareholder's signature to be an authorized signer and that there is no such writing granting authority in the property management agreement.
Petitioner submitted into evidence a letter that the Agent signed saying that he is authorized to commence this proceeding ("the Letter"). The Agent testified that he addressed the Letter to people in his office who process evictions.
Petitioner submitted into evidence a document dated August 30, 2022 signed by the [*3]Shareholder authorizing the commencement of this proceeding ("the Authorization"). The Agent testified that this writing was not necessary for him to start this case.
Petitioner submitted into evidence its founding documents. The founding documents show that Petitioner has one member, an LLC called "Simry Realty Corp." The Shareholder executed an operating agreement ("the Operating Agreement") on behalf of "Simry Realty Corp." as an authorized signatory.
The Agent testified on cross-examination that Respondent is the Shareholder's daughter; that he knew that Shareholder had given Respondent permission to live in the subject premises; that the Shareholder is the majority owner of Petitioner; that the Building is not the only building that he owns; that the Shareholder owns several properties; that the Shareholder is in the rental business; that there are some people at some times that have some relationship with the business entity who may have an arrangement that precludes payment of rent; that family members were not the only occupants of the portfolio without paying rent; that he asked the Shareholder if he gave Respondents possession of the subject premises but he did not ask the Shareholder why; that he did not believe that he needs Shareholder's consent to commence this proceeding; that he did not interpret the management agreement to require Shareholder's consent; that did not know why his affidavit referenced Shareholder's consent; that he is an agent for the owner of the Building; that he heard Shareholder testify about his ownership stake in the Building; that he was surprised when he heard the Shareholder's testimony that the Shareholder did not authorize the commencement of this proceeding; that he disagreed with the Shareholder's testimony that the Shareholder did not direct him to commence this proceeding; that the Shareholder did not direct him to commence this case but the Shareholder was notified about it and acknowledged it; that that he did not interpret the management agreement to require the Shareholder's consent to commence an eviction case; that he spoke to the Shareholder before any moves were made; that he did not know if bringing this case was an emergency, although it felt urgent to him; that the Shareholder signed the Authorization in front of the Agent; that the Shareholder wanted to have a good relationship with Respondent but that was not always reciprocated; that he needed a written authorization as insurance just in case the Shareholder did not appear; that it did not appear that the Shareholder would be in Court on the second day of trial; that the Shareholder signed myriad operating agreements; that Respondent was suing them as business owners and he felt that he should go the extra mile to document everything that he had to proceed with the eviction; that any license agreement expired; that he did not know the terms of the license; that he did not ask the Shareholder what the terms of the license are; that he could not tell if there was a license; and that he did not ask Respondents to pay rent before August 30, 2022.
The Agent testified on redirect examination that he spoke to the super and other people involved in day-to-day management; that he learned that the Shareholder gave Respondents possession of the subject premises without paying rent and without a lease; that Respondents use the subject premises to visit family members from time to time; that there was a prior proceeding that had been commenced and was dismissed before this one; that he had further conversations with the Shareholder after the commencement of this proceeding; that he had a conversation with the Shareholder the same morning as the Shareholder's testimony; that he was in the Courtroom with the Shareholder testified; that he was surprised and confused by the Shareholder's testimony; and that he had documents filled out because Respondents are actively litigating against him and his business.
Discussion
Petitioner argues that a directed verdict motion is not timely as Petitioner has not yet rested. However, CPLR §4401 does not place any restriction on the posture of such a motion when it is based on an admission. Indeed, the Court may dismiss a case as early as a party's opening statement if such an opening statement contained an admission that "subvert[s]" the cause of action, McLoughlin v. Holy Cross High School, 135 AD2d 513, 514 (2nd Dept. 1987), or "ruins" it. Becker v. David Askin Jr.. Inc., 36 AD2d 520 (1st Dept. 1971).
Petitioner predicated its cause of action on its termination of Respondents' license. It's hard to think of a more definitive "subversion" of that cause of action than for Petitioner's majority shareholder—and Petitioner's own witness—testify that the proceeding was a mistake, that he was unaware of this proceeding, and that he did not want to see Respondent evicted. Unless the articles of organization of an LLC vest management to a discrete manager, it is the acts of a member of the LLC that bind the LLC. Limited Liability Company Law §412. To the extent that the evidence shows a discrepancy between the views of the Shareholder and the Agent, then, the views of the Shareholder would prevail.
Petitioner argues in opposition to Respondents' motion that the Shareholder indeed delegated to the Agent the authority to speak on Petitioner's behalf in eviction matters, referencing both the Operating Agreement and another document that is not in evidence but is substantively identical to the Operating Agreement.[FN1]
The Court considers the document that is not in evidence because Respondents are moving for a directed verdict before Petitioner has rested. The Court refers to the two documents collectively as the Operating Agreements.
Assuming arguendo that the Operating Agreements amount to "articles of organization" as identified by Limited Liability Company Law §412, the Shareholder is the contact for the "Owner" of Petitioner in the Operating Agreements and the Agent is the contact for the "Manager" of Petitioner. The "Owner" is otherwise defined as another LLC, although the preponderance of the evidence shows that the Shareholder is the majority owner and/or the only member of that LLC. The "Manager" is defined as an LLC that is a management company apparently headed by the Agent. The Agent only signed for the "Manager" on one of the operating agreements and the Shareholder signed the same agreement on behalf of the "Owner." The Agent signed the other operating agreement for both parties.
Paragraph 2.01(n) of the Operating Agreements gives the "Manager" authority to, inter alia, institute any legal proceedings to terminate any license "[i]f requested by Owner . . ." (emphasis added). Even assuming arguendo that the Shareholder at one point requested that the Agent and/or Petitioner commence this proceeding, the Shareholder's testimony evinced an unequivocal intention to withdraw that request.
Moreover, paragraph 2.01(a) of the Operating Agreements provides that the relationship between "Owner" and "Manager" shall be that of principal and agent. The intention of a principal determines the scope of an agent's actual authority. Wen Kroy Realty Co. v. Pub. Natl. Bank & Trust Co., 260 NY 84, 89 (1932). See Also Terwilliger v. Ontario, C. & S. R. Co., 149 NY 86, 92 (1896)(the authority of an agent, derivative and not original, ceases when the principal, for whatever reason, withdraws the delegation). Again, even assuming arguendo that the Shareholder at one point authorized the Agent to commence this proceeding, as a principal, the Shareholder retains the prerogative to change the Agent's authority to prosecute this eviction [*4]proceeding.
Petitioner argues that the Court cannot consider the Shareholder's testimony because Respondents did not finish their cross-examination of the Shareholder by the break of the first day of trial and the Shareholder did not appear on the second day of trial. Cross-examination of an adverse witness is a matter of right in every trial of a disputed issue of fact. Friedel v. Bd. of Regents, 296 NY 347, 352 (1947), M.S. v. Cty. of Orange, 64 AD3d 560, 562 (2nd Dept. 2009), Barnes v. City of NY, 44 AD3d 39, 46 (1st Dept. 2007), Mujica v. Jerome-Human, 65 Misc 3d 158(A)(App. Term 2nd Dept. 2019). Petitioner frames its argument so as to support an adversary's right to cross-examine. However, if the Court adopted Petitioner's remedy of striking the Shareholder's testimony, the Court would actually undermine Respondent's right to cross-examine. If the rules of evidence permitted a party's witness to have damaging cross-examination testimony stricken because of that witness's subsequent absence at the trial, that would incentivize witnesses to skip trials upon giving unhelpful testimony.
The Court denies Respondent's application, not made by a motion, to sanction Petitioner. The Court draws the inference that the Shareholder's testimony was a surprise. Whatever bona fide disputes there may be between the Shareholder and the Agent do not warrant sanctions at this time. Be that as it may, before availing itself of the resources of the Court to seek a remedy, Petitioner's various constituents need to get their stories straight.
It is therefore ordered that the Court grants the motion and dismisses this proceeding.
This constitutes the decision and order of the Court.
Dated: January 22, 2025
New York, New York
HON. JACK STOLLER, J.H.C.

Footnotes

Footnote 1:The documents are both electronically filed with the Court, as NYSCEF ##23 and 46.